UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SHERYL L. GUSCH,

                                        **Plaintiff,**                              **18-CV-0346Sr**

v.

**COMMISSIONER OF SOCIAL SECURITY,**

                                        **Defendant.**

---

## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #6.

## BACKGROUND

Plaintiff applied for disability insurance benefits with the Social Security Administration ("SSA"), on March 13, 2015, alleging disability beginning April 2, 2013, when she was 45 years old, due to cervical and lumbar degenerative disc disease, fibromyalgia, and depression. Dkt. #7, p.94.

On August 4, 2017, plaintiff, represented by counsel, appeared and testified, along with an impartial vocational expert, Millie Droski, before Administrative

Law Judge ("ALJ"), Maria Herrero-Jaarsma. Dkt. #7, pp. 45-93. At the outset of the hearing, plaintiff's attorney advised the ALJ that there were outstanding records from plaintiff's rheumatologist, who was monitoring plaintiff's blood work to watch for signs of lupus, stating: "there has not been a lupus diagnosis so I don't think these records are really going to add anything . . . to the case." Dkt. #7, p.48. The ALJ instructed plaintiff's counsel to obtain the medical records within seven days of the hearing. Dkt. #7, p.49. Plaintiff's attorney identified the following medically determinable severe impairments affecting plaintiff:

> Cervical disc disease . . . complaints of lower back pain and thoracic pain which I would best characterize as an arthritic [or] degenerative process although MRI findings have been minimal. She has gone through extensive treatments [for] those conditions. She also has a history of bilateral carpal tunnel for . . . which she [under]went surgery and also an arthritic right thumb that was not addressed surgically.
>
> The file reflects or mentions fibromyalgia. I would say that it may . . . not meet the requirements with medically-determinable impairment under the . . . applicable SSR because there's not an indication of how many tender points she has, although again I would point out that the record does indicate from a pain management standpoint, she's gone through extensive treatment with trigger point injections with Dr. Zahn.

Dkt. #7, p.51. Plaintiff's attorney reiterated: "I know I don't have what I need for the SSR." Dkt. #7, p.52.

Plaintiff testified that her back pain was "like somebody's taking a knife and just twisting and it's constant." Dkt. #7, p.59. She described her level of pain as an 8, explaining that the weather and constant movement would make it worse. Dkt. #7,

p.59. Plaintiff testified that her symptoms were getting worse, causing pain to radiate from her neck down her lower back and into her hips and down through the back of her legs to her feet, making it hard to walk. Dkt. #7, pp.63-64. Plaintiff associated her migraine headaches with her cervical issues, testifying that medication and botox injections have reduced their frequency to "maybe once every couple months." Dkt. #7, pp.67-68. Plaintiff also testified that her carpal tunnel pain would flare up when the weather changed and was worse on the right side but also present on her left, shooting from her thumb up to her elbow every couple of weeks or so and lasting a couple of hours. Dkt. #7, pp.65-67. She experiences numbness in her fingertips daily. Dkt. #7, p.76. Plaintiff testified that her botox, epidural, steroid and trigger point injections, as well as her occipital nerve blocks, lasted about two weeks. Dkt. #7, pp.70-71. She testified that her pain medication knocked her out. Dkt. #7, p.62.

Plaintiff was able to care for her personal needs and cook meals for her husband and teenage daughter, but could not vacuum or wash laundry or lift groceries. Dkt. #7, pp.72-73 & 78. Plaintiff continued to drive short distances a couple of timer per week. Dkt. #7, p.74. She could sit or stand approximately 15-20 minutes before she would need to change positions but after a couple of hours, she would need to either recline or lie down. Dkt. #7, p.74. She experiences muscle spasms every day and cannot stand for long periods of time due to weakness in her legs. Dkt. #7, p.76. She also testified that she was dizzy a lot. Dkt. #7, p.76. She experiences pain when she reaches overhead. Dkt. #7, p.77.

When asked to assume an individual with the residual functional capacity ("RFC"), to perform light work with the ability to change positions from sitting to standing every twenty minutes during an eight-hour day while remaining on task and who could occasionally climb ramps and stairs, stoop and balance on level surfaces but could never kneel, crouch or crawl and who could engage in frequent rotation, flexion and extension of her neck and frequent bilateral reaching, handling, fingering and feeling, but no overhead reaching, *inter alia*, the VE testified that there were jobs where an individual could "sit/stand equally" and that the jobs proffered "would allow for being up and down" and could "be performed either sitting or standing." Dkt. #7, pp.85-86.

When asked to assume an individual with the RFC to perform sedentary work with the ability to change positions from sitting to standing every twenty minutes during an eight-hour day while remaining on task and who could occasionally climb ramps and stairs, stoop and balance on level surfaces but could never kneel, crouch or crawl and who could engage in frequent rotation, flexion and extension of her neck and frequent bilateral reaching, handling, fingering and feeling, but no overhead reaching, *inter alia*, the VE testified that plaintiff could perform the jobs of order clerk for food and beverage, document preparer and stuffer for toys, each of which was unskilled. Dkt. #7, pp.83-84 & 87. In reaching this opinion, the VE explained that she was relying upon her professional experience with regard to the restriction of overhead reaching because the DOT did not differentiate between lateral, forward or overhead reaching. Dkt. #7, pp.88-89.

On October 4, 2017, the ALJ rendered a decision that, pursuant to Medical-Vocational Rule 201.14, plaintiff was disabled as of August 9, 2017, the date her age category changed to an individual closely approaching advanced age, . Dkt. #7, pp.23 & 37-38. The Appeals Council denied review on January 31, 2018. Dkt. #7, p.4. On March 15, 2018, plaintiff commenced this action seeking review of the Commissioner's final decision denying her claim of disability between April 2, 2013 and August 9, 2017. Dkt. #1.

**DISCUSSION AND ANALYSIS**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 404.1520(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since the alleged onset date of April 2, 2013; (2) plaintiff's degenerative disc disease of the cervical spine status-post multiple fusion surgeries; degenerative disc disease of the lumbar spine; bilateral carpal tunnel syndrome status-post bilateral

release surgeries; and migraine headaches constitute severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the capacity to perform sedentary work with the following non-exertional limitations: plaintiff requires changing positions from sitting to standing during the eight-hour workday while remaining on task and can sit for twenty minutes before shifting positions and stand for twenty minutes before having to sit and can occasionally climb ramps and stairs, balance on level surfaces and stoop but can never kneel, crouch or crawl, can frequently rotate, flex and extend her neck, can frequently engage in bilateral reaching in all directions except overhead reaching, which is limited to occasional, can engage in frequent bilateral handling, fingering and feeling and should never be exposed to unprotected heights, moving machinery or mechanical parts and cannot drive motor vehicles or operate other machinery and should avoid bright lights and more than moderate levels of noise; and (5) plaintiff was unable to perform her past relevant work as a waitress, but retained the functional capacity to work in unskilled, sedentary positions such as order clerk, document preparer or toy stuffer and was not, therefore, disabled within the meaning of the SSA. Dkt. #7, pp.25-38.

Plaintiff argues that the ALJ failed to properly evaluate plaintiff's overall symptoms and limitations and specifically failed to assess plaintiff's fibromyalgia or arthritis in her hands. Dkt. #8-1, pp.20 & 24.  Plaintiff also argues that the vocational expert's testimony that plaintiff could perform certain sedentary jobs despite the requirement to change positions every 20 minutes is inconsistent with the definition of sedentary work. Dkt. #8-1, p.28.

The Commissioner responds that the ALJ's determination that plaintiff's fibromyalgia did not constitute a medically determinable impairment and her hand pain did not rise to the level of a severe impairment is supported by substantial evidence. Dkt. #11-1, p.11. Specifically, the ALJ properly determined that the medical evidence did not comply with the Social Security regulation, SSR-12p, regarding diagnostic criteria for fibromyalgia, and that plaintiff had not continued treatment with respect to her thumb, which exhibited normal abduction strength. Dkt. #11-1, pp.11-14. In any event, the Commissioner argues that plaintiff fails to allege any work-related limitation caused by these alleged impairments which was not already considered by the ALJ. Dkt. #11-1, p.14. Finally, the Commissioner responds that there is no conflict between the vocational expert's testimony and the DOT because the DOT listings do not address sit/stand options. Dkt. #11-1, p.19.

Social Security Ruling 12-2P provides that an individual has a medically determinable impairment of fibromyalgia if a physician has diagnosed the individual with fibromyalgia and the individual has: (1) a history of pain in all quadrants of the body that has persisted for at least 3 months; (2) at least 11 positive tender points on physical examination bilaterally and both above and below the waist; and (3) evidence that other disorders that could cause the symptoms or signs were excluded. 2012 WL 3104869. As plaintiff's attorney acknowledged, while plaintiff's treating physician observed "painful trigger points . . . similar to many represented in fibromyalgia," plaintiff's medical record does not document at least 11 positive tender points on physical examination bilaterally and both above and below the waist. Dkt. #7, pp.51-52, 311, 370, 522.

Moreover, plaintiff's attorney conceded that plaintiff's rheumatologist, whose records were not submitted to the SSA, was not providing treatment relating to plaintiff's fibromyalgia symptoms. Dkt. #7, p.48. Thus, despite documentation of trigger points and extensive treatment with trigger point injections (Dkt. #7, pp. 511, 513, 564, 573, 575, 579, 581, 584, 587, 593, 596, 599, 602, 605,612, 615, 617), the medical documentation is not sufficient to demonstrate fibromyalgia as a medically determinable impairment. *See Selian v. Astrue*, 708 F.3d 409, 420 (2d Cir. 2013) ("The ACR diagnostic criteria for fibrmyalgia requires finding . . . that a patient exhibits 11 out of 18 . . . tender points, but no such specific examination appears in the record."); *Lim v. Colvin,* 243 F. Supp.3d 307, 315 (E.D.N.Y. 2017) (remanding where treating "physicians frequently noted that Plaintiff had 11 or greater of 18 tender points on her body); *Cf. Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003) (plaintiff "exhibited the clinical signs and symptoms to support a fibromyalgia diagnosis under the American College of Rheumatology (ACR) guidelines, including primarily widespread pain in all four quadrants of the body and at least 11 of 18 specified tender points on the body."). In any event, the ALJ recognized plaintiff's "persistent neck, shoulder, and low back pain, with limited range of motion, tenderness, numbness, bilateral hand discomfort and numbness, recurring headaches and ongoing medication treatment" in crafting plaintiff's RFC. Dkt. #7, p.33.

The ALJ's determination that plaintiff's diagnosis of carpometacarpal (CMC) arthritis (Dkt. #7, pp. 266, 268, 271), has not caused more than minimal work-

related limitations for a continuous period of twelve months and was not, therefore, severe, is supported by substantial evidence. Dkt. #7, p.27. The ALJ noted that plaintiff maintained 5/5 bilateral thumb abduction strength (Dkt. #7, p.265 & 271), and had not sought treatment for her thumb since mid-2014. Dkt. #7, p.27. Moreover, the independent consultative examiner observed intact hand and finger dexterity and 5/5 bilateral grip strength upon examination on June 25, 2015. Dkt. #7, p.514. In any event, the ALJ accounted for this impairment in his RFC by limiting plaintiff to frequent but not constant gross and fine manipulation. Dkt. #7, p.29.

The ALJ determined that plaintiff was capable of performing less than a full range of sedentary work. "Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a). In the instant case, the VE testified that the jobs proffered would "allow for being up and down" and could "be performed either sitting or standing." Dkt. #7, p.86. Where, as here, the Dictionary of Occupational Titles ("DOT"), does not address the availability of a sit/stand option, it "cannot contradict the vocational expert's testimony which endorsed such an opinion." *Pahl v. Colvin*, No. 12-CV-316, 2013 WL 3761545, at * 6 (W.D.N.Y. July 16, 2013); *See See Moslow v. Berryhill*, 16-CV-198, 2019 WL 1508045, at *5 (W.D.N.Y. Apr. 4, 2019) ("Courts in this district have repeatedly found that when the DOT is silent on an issue, no actual conflict exists between the VE testimony and the DOT.").

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #8), is denied and Commissioner's motion for judgment on the pleadings (Dkt. #11), is granted.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:** **Buffalo, New York**
**August 30, 2019**

*S/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**